JDL:NR
F.# 2012R01442

**13 M 1020**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

DWAYNE BLACKWOOD,
    also known as "Busha,"
    and "Butcher,"

        Defendant.

- - - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF ARREST
WARRANT

(T. 18, U.S.C. §§ 2
and 924(c)(1)(A); T. 21
U.S.C. §§ 846 and
841(b)(1)(D))

EASTERN DISTRICT OF NEW YORK, SS:

        I, DAVID BROWN, being duly sworn, depose and state that I am a Special Agent of the United States Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

        Upon information and belief, on or about and between March 2013 and August 13, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DWAYNE BLACKWOOD, also known as "Busha" and "Butcher," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense

1

involved a substance containing marijuana in violation of Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(D))

Upon information and belief, on or about August 13, 2013, within the Eastern District of New York, the defendant DWAYNE BLACKWOOD, also known as "Busha" and "Butcher," did knowingly and intentionally use and carry a firearm during and in relation to one or more drug trafficking crime, and did knowingly and intentionally possess said firearm in furtherance of such drug trafficking crime.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent of DEA, duly appointed according to law and acting as such. I have been a DEA Special Agent for approximately one year and am currently assigned to the New York Office. I am tasked with investigating narcotics trafficking, and other criminal conduct involving narcotics,

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

including armed robberies. These investigations are conducted both in an undercover and overt capacity. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2. I am currently involved in an investigation of the Bloodstains Crew, also known as the 90's Crew (the "Bloodstains"). This investigation is being conducted by the DEA in conjunction with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), the New York City Police Department ("NYPD"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and the United States Marshals Service ("USMS"). The Bloodstains are a violent street gang operating out of Brooklyn, New York, which is engaged in narcotics trafficking, armed robberies of rival drug dealers and acts of violence up to and including murder.

### The Federal Wiretap Investigation

3. On March 11, 2013, the Honorable Margo K. Brodie of the United States District Court for the Eastern District of New York authorized the interception of wire communications for

a cellular telephone with the number (347) 922-2701, which was utilized by Ronald Williams (the "WILLIAMS Phone"). Interception of that phone began on March 12, 2013. On April 10, 2013, the Honorable Kiyo A. Matsumoto of the United States District Court for the Eastern District of New York authorized the continued interception of wire communications and the commencement of interception of electronic communications for the WILLIAMS Phone. Judge Matsumoto's order expired on May 10, 2013, and interception was terminated.

4. On Thursday, March 19, 2013, law enforcement agents intercepted a series of calls between Williams and the defendant DWAYNE BLACKWOOD, also known as "Busha" and "Butcher." At 11:33 a.m. on March 19, 2013, Williams placed an outgoing call to an unidentified male. Williams requested that the unidentified male ("UM 1") connect with "Butcher" on a three-way call with Williams because "Butcher" had not been answering Williams' calls. Williams further stated "that is why I wanted you to three-way him and give him a message and let him know that I'm going to park out by his house and nobody can defend him because I want mine." Later in the call, Williams stated "I'm going to knock out his [Butcher's] skull."

4

5. In the same call, Williams made reference to being "robbed" by "Butcher" and discussed "weed" that "Butcher" had provided to another individual. Based on my training and experience and the progress of this investigation to date, I believe that Williams was discussing committing acts of violence against "Butcher" based on a dispute relating to the distribution of marijuana.

6. On Tuesday, March 19, 2013 at 11:43 a.m., law enforcement intercepted a call from Williams to DWAYNE BLACKWOOD. The conversation included the following exchange:

WILLIAMS: You know because you carried my weed and sold it to bombo claat [profanity] Boy Boy.

BLACKWOOD: I got a different thing from a youth and gave it to Boy Boy.

WILLIAMS: Listen man, you are the one who [U/I] bumbo claat [U/I] thing. What is wrong with you Butcher, I'm going to shoot you into your face... you can go and tell Sugar I said I'm going to mash up your blood claat [profanity] for my things.

Based on my training and experience, and the progress of the investigation to date, I believe that the reference to "my weed" referred to marijuana that Williams believed was intended for sale to Williams. I further believe that Williams was threatening BLACKWOOD because BLACKWOOD had failed to sell marijuana to Williams.

5

7. Shortly after the call described in paragraph 6, Williams again placed a call to BLACKWOOD. At 11:45 a.m. on March 19, 2013, agents intercepted a call during which the following exchange occurred:

WILLIAMS: I want you to remember I know where you live and I want you to take it as a threat. You hear, you better look over your shoulder, Butcher. That is what I'm blood claat telling you and nobody can't [U/I].

BLACKWOOD: So, that is what the whole of the thing come down to, brother.

WILLIAMS: No man can blood claat save you, no man can save you. You are going on as if you take man for a fool after you robbed man things. Hey, boy, what is wrong with you butcher? No man can card [scam] me, you know.

BLACKWOOD: I don't have your things brother. I don't have your things, I got stuck up and I took Tedroy your thing.

WILLIAMS: Butcher, go and suck your mother and bring my thing before the evening is done or I'm going to put you into a body bag. Listen to me, I swear to you. I'm going to put you into a body bag and not even Sugar can [U/I]. All he can do is bury your blood claat [profanity].

Based on my training and experience and the investigation that has been conducted thus far, I believe that BLACKWOOD is informing Williams that BLACKWOOD had sold [?] another individual ("Tedroy") marijuana intended for Williams ("your things").

6

8. During the course of the investigation, DEA agents have obtained information about the drug trafficking activities of BLACKWOOD and his criminal associates from a confidential informant whose information has proven to be reliable and has been corroborated by independent evidence ("CW").[2]

9. On August 13, 2013, DEA agents received information from the CW that BLACKWOOD was driving a 2003 Grey Infiniti (the "Infiniti") in the vicinity of Flatbush and Utica Avenues in Brooklyn, New York and that BLACKWOOD was in possession of a firearm and a quantity of marijuana that was located in the interior of the Infiniti. Based on prior investigation, DEA agents had determined that the Infiniti was registered to BLACKWOOD.

10. Immediately after receiving this information, DEA agents and NYPD officers observed BLACKWOOD driving the Infiniti in the area of Brooklyn identified by the CW. Agents used

---

[2] CW has provided and continues to provide information to the DEA in return for payment. Information provided by CW has proven to be reliable. CW has previously appeared at trial as a cooperating witness for the government. In addition, information provided by the CW has led to multiple seizures of narcotics and narcotics proceeds, as well as additional arrests.

7

information from GPS location data for the Infiniti that they were receiving pursuant to a judicially authorized warrant in connection with this surveillance. Agents observed BLACKWOOD pull the Infiniti to the side of the road in the on Fillmore Avenue in Brooklyn, New York, approximately eight blocks from the corner of Utica Avenue and Flatbush Avenue.

11. The NYPD officers observed BLACKWOOD stop the Infiniti at the side of the road and approach the trunk of his vehicle. The officers believed this activity was suspicious based on the information provided by the CW and the information described above which indicated BLACKWOOD's involvement in narcotics trafficking. Specifically, the officers believed that BLACKWOOD may have been attempting to move marijuana or a firearm from the interior of the Infiniti to the trunk of the Infiniti. At the time of the stop, BLACKWOOD's vehicle was parked and BLACKWOOD was reentering the Infiniti. Officers approached BLACKWOOD, who was the only individual near the Infiniti, and asked for BLACKWOOD's identification and car registration. BLACKWOOD indicated it was in the glove box and gestured toward the glove box.

12. In connection with this stop, NYPD officers, standing outside of the Infiniti, looked inside the interior of

8

the vehicle and observed a bag in plain view on the passenger seat of the Infiniti. Based on their reasonable suspicion that BLACKWOOD may have had a firearm present in the passenger compartment of the firearm and to ensure their own safety, officers inspected the content of the bag. Upon inspecting the bag, the detectives discovered a Glock 17 firearm. The firearm was loaded, with a bullet in the chamber.

13. BLACKWOOD was placed under arrest and advised of his Miranda rights, which he appeared to understand and acknowledged. He consented to a search of the Infiniti. During that search, officers discovered a motorcycle helmet on the front seat of the Infiniti. Upon inspecting the motorcycle helmet, the officers discovered approximately one quarter of a pound of marijuana in a bag inside the cavity of the helmet. BLACKWOOD subsequently waived his Miranda rights and agreed to speak with agents, telling them in sum, in substance and in part, that the marijuana and the firearm in the Infiniti belonged to him. BLACKWOOD was subsequently released in furtherance of the investigation.

WHEREFORE, your deponent respectfully requests that the defendant DWAYNE BLACKWOOD also known as "Busha" and "Butcher," be dealt with according to law. I further request

9

that the Court order this application, including affidavit and arrest warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation and disclosure of this application would serious jeopardize the ongoing investigation, as such disclosure would give the targets of the investigation an opportunity to destroy evidence, harm or threaten victims or other witness or flee from or evade prosecution.

_____
David Brown
Special Agent
Drug Enforcement Administration

Sworn to before me this
20th day of November, 2013